## REVISED LOAN SALE AND SERVICING AGREEMENT

This agreement is entered into between Neighborhood Housing Services of America ("NHSA"), and _____ ("Seller"), who shall contract to sell Mortgages to NHSA and to service any Mortgages purchased by NHSA as hereinafter set forth;

WHEREAS, from time to time Seller may offer to sell and NHSA may agree to buy Mortgages originated under Seller's affordable mortgage program(s); and

WHEREAS, each Mortgage so purchased shall be serviced by Seller for NHSA; and

WHEREAS, due to the nature of the product and services that Seller has to offer, Seller agrees that it shall not have the right or ability to assign, delegate or transfer any of its rights or obligations under this agreement or the Purchase/Service Contract; and

WHEREAS, the sale and servicing of Mortgages shall be pursuant to the terms and conditions of this agreement and the Purchase/Service contract (a copy of which is attached hereto as Exhibit A) (collectively, and together with any other documents executed in connection with such documents, the "Purchase Documents") and

WHEREAS, Seller has been designated as an Network Organization ("NWO") by the Board of Directors of NHSA;

NOW, THEREFORE, Seller and NHSA agree as follows:

### ARTICLE I
### DEFINITIONS

101. <u>Mortgage/Mortgagor/Mortgaged Premises</u>. "Mortgage(s)" means a promissory note secured by a document creating a lien on real estate (fee simple or an acceptable leasehold) upon which there is located a non-mobile structure(s) designated principally for residential use by four (4) families or less. "Mortgagor" means the maker of the promissory note, the maker of the security instrument and, unless the context otherwise requires, the owner (or any subsequent owner) of the Mortgaged premises. "Mortgaged premises" means the real property covered under the security instrument which relates to the promissory note.

102. <u>NWO Project Area</u>. "NWO project area" means the geographic area designated by Seller's Board of Directors to be its program's target area for rehabilitation projects.

### ARTICLE II
### SALE/SERVICE QUALIFICATIONS

201. <u>The Mortgage</u>. As to each Mortgage sold to NHSA and continuing throughout the time Seller is servicing such Mortgage for NHSA and as to each Secured Reserve Mortgage (as



EXHIBIT A

defined in Section 501) delivered to NHSA and continuing throughout the time NHSA is holding such Secured Reserve Mortgage, Seller represents and warrants to NHSA as follows:

a) Origination. The Mortgage was closed in Seller's name as lender or validly assigned and endorsed to Seller as a holder in due course. Whether Seller or another entity originated or packaged the Mortgage does not in any way affect Seller's representations and warranties to NHSA.

b) Occupancy. To the best of Seller's information and belief, the mortgagor is occupying all or part of the Mortgaged premises, the Mortgaged premises are the mortgagor's principal residence, and the mortgagor(s) is(are) individual(s).

c) Age/Outstanding Balance. The Mortgage had a minimum three month payment history prior to assignment to NHSA and all fees and expenses connected with such closing were fully and completely paid. In addition, all sums to be advanced under the Mortgage have been advanced and the Mortgage has no mandatory future advance clause. The outstanding balance is as represented by Seller to NHSA and is fully secured by the Mortgage.

d) Compliance with Law. All requirements of all federal, state and local laws, rules and regulations applicable to the Mortgage and the Mortgage loan transaction, including without limitation, mortgage licensing requirements (if applicable), truth-in-lending, flood control, real estate settlement procedures, usury, holders in due course and equal credit opportunity laws have been fully complied with; the Mortgage does not violate any such laws, rules or regulations; and any right of rescission in relation to the Mortgage under such laws, rules or regulations has expired.

e) Valid Lien; Not Modified. The Mortgage is a valid lien on the Mortgaged premises; the Mortgage is a legal, valid and binding obligation of the maker(s) thereof; enforceable in accordance with its terms and conditions, and free from any right of set off, counterclaim or other claim or defense; no part of the Mortgaged premises has been released from the Mortgage; the terms of the Mortgage have not been modified, amended, or in any way waived or changed and if a valid lien is required on any equipment or items of personal property, such lien has been perfected.

f) No Unknown Adverse Circumstances. The Mortgaged premises are undamaged by fire, windstorm or other casualty and there is pending no proceeding in eminent domain or for condemnation of all or any part of the Mortgaged premises. There are no circumstances or conditions with respect to the Mortgage, the Mortgaged premises or the credit standing of the mortgagor, which adversely affect the value or marketability of the Mortgage, of which NHSA has not been fully and previously informed.

g) Title. To the best of Seller's information and belief, after the exercise of due diligence, the title which is shown on the Mortgage instruments and documentation is the actual title existing on the Mortgaged premises.

h) <u>Plat or Survey</u>. For each Mortgage, Seller possesses a plat or survey (such as the type normally included with a title insurance policy) showing the boundaries, improvements, setback lines, easements, and encroachments onto or off of the Mortgaged premises, or equivalent documentation in accordance with prudent practice and custom in Seller's geographic area.

i) <u>Perfection of Security Interest</u>. Any and all actions required to perfect the security interest in the Mortgaged premises, including without limitation, recordation (and/or registration) and notification to prior lienholders (with a recorded request for notice of default where required), have been validly and duly completed.

j) <u>Hazard Insurance</u>. There is in full force and effect a hazard insurance policy issued by a reputable carrier, sufficient in type, amount of coverage, and endorsement to protect NHSA's security interest in the Mortgaged premises.

k) <u>Payment Records</u>. Seller maintains accurate records, prepared in accordance with generally accepted accounting principles consistently applied, reflecting all receipts and disbursements as to each Mortgage; all funds are received, retained, administered and/or disbursed in accordance with all laws, rules, regulations and contracts relating to Mortgage or escrow funds.

l) <u>Mortgage Not in Default</u>. There is no default or delinquency under the terms and conditions of the Mortgage.

m) <u>Legal Description/Internal Consistency</u>. Any legal descriptions of the Mortgaged premises as set forth in the Mortgage instruments or documentation are in a form which is consistent with good business and legal practices of the geographic area in which the Mortgaged premises are located, and are consistent from one document to the next.

n) <u>Mortgage File</u>. For each Mortgage, Seller maintains a Mortgage file containing all pertinent information, notices, documents, correspondence, etc., relating to such Mortgage; upon sale to NHSA each appropriate file shall be clearly marked to indicate NHSA's interest. (Refer to Exhibit B for documentary checklist.)

o) <u>Compliance with purchase Documents</u>. The Mortgage complies with all requirements of the Purchase Documents.

202. <u>Seller's Facilities</u>. Seller maintains adequate facilities located at or near an NWO project area and staffed with personnel qualified to give home improvement and financial counseling.

203. <u>Seller Authorized to Sell and Service Mortgages; Purchase Documents Authorized</u>. Seller is the sole owner of the Mortgage and has full legal authority, and has duly taken all required corporate action and has obtained any consents required to sell, transfer, and assign the Mortgage to NHSA free and clear of all claims or encumbrances of any type and to service thereafter the Mortgage for NHSA. The Purchase Documents have been duly authorized, executed and delivered by Seller, and are valid and enforceable in accordance with their terms

and conditions; and compliance by Seller with the terms and conditions of the Purchase Documents will not conflict with, result in a breach of or default under, or be adversely affected by any terms and conditions of the charter or bylaws of Seller, or of any agreement or instrument to which Seller is a party, or any judgment, order, or regulation to which Seller is subject. Seller is an authorized Seller of Mortgages to NHSA under the requirements set forth in the Purchase Documents.

204. **NHSA Authorized to Purchase Mortgages and Servicing; Purchase Documents Authorized.** NHSA has full legal authority and has duly taken all required corporate actions and has obtained any consents required to purchase Mortgages and servicing from Seller. The Purchase Documents have been duly authorized, executed and delivered by NHSA, and are valid and enforceable in accordance with their terms and conditions; and compliance by NHSA with the terms and conditions of the Purchase Documents will not conflict with, result in a breach of or default under, or be adversely affected by any terms and conditions of the charter or bylaws of NHSA, or of any agreement or instrument to which NHSA is a party, or any judgment, order, or regulation to which NHSA is subject.

## ARTICLE III
## SALE OF MORTGAGES

301. **Invitation; Offer and Acceptance.** NHSA shall invite Seller to submit up to a specified dollar amount of Mortgages for purchase. Seller shall then offer Mortgages to NHSA; Seller's offer shall be in the form of originally executed duplicates of the Purchase/Service Contract. NHSA shall then review the offered Mortgages and accept or decline each Mortgage by so indicating on the Purchase/Service Contract and returning one originally executed copy to Seller. Seller shall be under no obligation to offer any Mortgages and NHSA shall be under no obligation to accept any Mortgages. If a Mortgage is declined for purchase by NHSA, Seller may offer another Mortgage(s) up to the aggregate limit of the invitation.

302. **Date of Acceptance.** Acceptance as to each Mortgage shall be as of the immediately succeeding payment due date following notification of acceptance to Seller; thus, upon acceptance, all subsequent payments for principal and interest shall be due to NHSA and no proration will be necessary.

303. **Purchase Price.** The purchase price for each Mortgage shall be the outstanding principal balance of the Mortgage as of the immediately succeeding payment due date following notification of acceptance to Seller.

304. **Delivery Payment.** Within 30 days of NHSA's acceptance, Seller shall, at its own expense, forward Exhibit B and all the documents so designated to NHSA. Within 5 days of NHSA's receipt of such documents and verification as to proper form and execution, NHSA shall deliver to Seller payment of the purchase price of the Mortgages purchased.

305. **Transfer of Title/Documenting the Sale.** Seller shall be responsible, at its own expense, for completing all actions and documentation necessary to effect the sale. Such action includes, without limitation to the generality of the foregoing, endorsement of the promissory

FA961580_055.b/revised 2-15-05                    4

note, assignment (and any necessary recordation and/or registration of such assignment) of the security instrument, and notification to appropriate insurers or guarantors so as to effectuate any necessary policy or guarantee endorsement to protect NHSA's interest. In addition, at any time and at its own expense, Seller shall cause such further acts to be done as NHSA shall reasonably request in order to perfect its title to the Mortgage; including without limitation, the execution and delivery of such other documents, notices or agreements that NHSA may reasonably require to perfect, memorialize or give public notice of the transaction or any aspect thereof.

## ARTICLE IV
## SERVICING

401. <u>Servicing Obligations of Seller</u>. With respect to all Mortgages sold to NHSA, Seller shall perform all obligations of the Mortgages under the Mortgages as well as all services and duties customary to the servicing of Mortgages or as may be reasonably requested by NHSA, including but not limited to the following:

    a) <u>Counseling</u>. Seller shall continue to make counseling available to mortgagors.

    b) <u>Maintaining Files</u>. Seller shall maintain a Mortgage file on each Mortgage containing all pertinent information notices, documents and correspondence relating to such Mortgage substantially as outlined in Exhibit B.

    c) <u>Insurance Settlements</u>. Seller shall promptly notify NHSA of any losses and recommend a course of action; Seller may be named, instead of NHSA, as payee on insurance loss drafts and is authorized to endorse such drafts unless otherwise advised by NHSA. Seller shall carry out the collection and application of insurance proceeds after consultation with NHSA. Seller shall adhere to the terms of the Mortgage and all applicable laws regarding the application of insurance proceeds and all requirements and prudent practices concerning notification, inspection and approval. Seller shall take any required action to protect the priority of the Mortgage.

    d) <u>Watching the Mortgaged Premises</u>. Seller shall occasionally view the Mortgaged premises via drives through the NWO project area and shall promptly notify NHSA of any incidents of waste, severe deterioration, abandonment, etc. In addition, Seller will personally communicate with the mortgagor where such action seems prudently appropriate and will endeavor to counsel the mortgagor in an effort to restore the Mortgaged premises to their previous condition before such waste, deterioration, abandonment, etc.

    e) <u>Notice of Liens; Bankruptcies; Probate Proceedings, Etc</u>. Seller shall, at all times, use due diligence to prevent the attachment of additional prior liens to the Mortgaged premises, and shall promptly notify NHSA upon becoming aware that such lien has or will attach. Notice shall promptly be given to NHSA of any state insolvency or federal bankruptcy proceedings in which any mortgagor is seeking relief or is a defendant debtor, or the death of any mortgagor or guarantor, or the sale, transfer or vacancy of the Mortgaged premises. Seller shall diligently endeavor to ascertain the occurrence of waste, deterioration, or lack of repair of the

Mortgaged premises, or the occurrence of any other default under the terms of the Mortgage, and shall promptly report such occurrences to NHSA. Accurate records of the aforesaid matters shall be maintained by Seller.

f) <u>Protection/Enforcement of Security Interest</u>. Seller shall take any and all actions necessary to protect NHSA's security interest and its status (regardless of whether the Mortgage is in default or not), including without limitation, representing NHSA in any proceedings which might affect the Mortgage or its status and obtaining the full benefits of any guaranty or insurance benefits, subject to supervening instructions by NHSA. If such action requires out-of-pocket expenses, Seller is authorized to expend up to $200 for such purposes without the prior written consent of NHSA; any greater expenditure shall require written consent. Any amounts so expended will be reimbursed by NHSA to Seller without interest, upon delivery to NHSA of proper receipts for such expenditures.

g) <u>Modification; Release</u>. Seller will not modify, release, waive, change or amend any term(s) or condition(s) of the Mortgage without the prior written consent of NHSA. If Seller is authorized by NHSA to take any such action, Seller shall complete any and all necessary documentation to effect the change and to protect NHSA's security interest without expense to NHSA unless such expense is expressly agreed to by NHSA.

h) <u>Change of Ownership</u>. Seller shall immediately notify NHSA of any change of ownership in the Mortgaged premises and will take any and all action required to protect NHSA's security interest.

i) <u>Military Indulgence</u>. When a mortgagor is in the military service, he/she may be entitled to benefits under the Soldiers' and Sailors' Civil Relief Act, as amended. Seller should be familiar with and act in accordance with the requirements of the Act and other pertinent requirements. Upon receipt of NHSA approval, Seller may offer appropriate relief to such a mortgagor. Seller will continue to maintain at least semiannual contact with such a mortgagor.

j) <u>Collection</u>. Seller shall proceed diligently and use its best efforts to collect all payments due under the terms of the Mortgages as they become due and payable, and shall use its best efforts to obtain compliance with all other terms of the Mortgages. All such payments, including amounts representing tax and/or insurance escrows, will be segregated from Seller's other funds in a demand deposit account designated "NHSA Trust and Escrow Account" or in another account the use of which has been approved in writing by NHSA (in either case, such account is referred to herein as the "NHSA Trust and Escrow Account").

Seller shall maintain accurate records of such payments, indicating principal, interest, outstanding balance and any other charges. On the fifteenth (15th) day of each month (or the next following business day), Seller will send to NHSA the full amount of payments received for principal and interest on all Mortgages purchased for which payments were due during the preceding month; such procedure will start approximately forty-five (45) days after the date of acceptance. Seller shall retain any amounts received for late charges or other services, provided that all payments shall first be applied to interest and principal.

k) <u>Reporting</u>. The funds sent to NHSA pursuant to paragraph (j) above shall be accompanied by a quarterly report which shall identify the Mortgages to which the payments apply (see Exhibit C). Such report shall also note any delinquencies or defaults and describe what action is being taken to correct such delinquencies or defaults.

l) <u>Financial Statements</u>. Annually, within 60 days after the end of Seller's fiscal year, Seller shall provide NHSA with a balance sheet, statement of operations, and statement of sources and application of funds for the fiscal year just ended, audited by and with the unqualified opinion of certified public accountants. Such audited financial statements shall be prepared in accordance with generally accepted accounting principles consistently applied. As soon as available, and in any event within 30 days after the close of each quarter, a balance sheet, profit and loss statement of Seller as of the close of such quarter and covering operations for the portion of Seller's fiscal year ending on the last day of such quarter, all in reasonable detail and stating in comparative form the figures for the corresponding date and period in the previous fiscal year prepared in accordance with generally accepted accounting principles on a basis consistently maintained by Seller and certified by an appropriate officer of Seller, subject, however, to year-end adjustments.

402. <u>Delinquencies</u>. Seller shall give special attention to delinquent accounts and shall use due diligence to obtain current payment of such accounts so long as they continue to be serviced by Seller. Without exclusion to or limitation of any other rights or remedies NHSA may have under the terms of the Purchase Documents or at law or in equity, the following provisions shall apply to the servicing of delinquent accounts:

a) <u>Mortgages Less than 90 Days Delinquent</u>. On any Mortgage which is less than 90 days delinquent, Seller shall follow the customary, usual and prudent business practices of its geographic area in collection efforts provided that no change or modification shall be made in the terms of the Mortgage documents without the prior written consent of NHSA.

b) <u>Mortgages 90 Days or More Delinquent</u>. With respect to any Mortgage which is 90 days or more delinquent, NHSA shall, in its sole discretion, have the right to require Seller to repurchase or replace such Mortgage within 30 days of such delinquency, and if Seller does not comply, to immediately replace such Mortgage with Secured Reserve Collateral.

c) <u>Mortgages on Rental Property</u>. The same guidelines as on rental property, except that, in addition to normal collection efforts, Seller shall take any required action including without limitation, the appointment of a receiver or trustee, to secure rental payments directly to Seller for the benefit of NHSA.

403. <u>Servicing Compensation</u>. Quarterly, NHSA shall pay to Seller compensation of three-eighths of one per cent per annum based on the outstanding principal balance of the Mortgage(s). NHSA will send Seller a check for such compensation on the twentieth (20th) day (or the next following business day) following the end of each calendar quarter.

404. <u>Servicing/Sales Expenses.</u> Seller shall perform all of its services and duties hereunder at its own expense and without cost or charge to NHSA except as expressly provided in the Purchase Documents.

405. <u>Termination. Upon the occurrence of a material breach or failure of Seller to perform under the terms and conditions of this agreement,</u> NHSA may terminate servicing by Seller with respect to any Mortgage or all Mortgages upon thirty (30) days written notice. Upon such termination by NHSA, Seller shall promptly supply appropriate reports, documents and information as requested by NHSA to any person or entity designated by NHSA and shall use its best effort to effect the orderly and efficient transfer of servicing to a new service designated by NHSA.

## ARTICLE V
## RESERVE REQUIREMENTS

501. <u>Secured Reserve Requirement.</u>

a) In order to secure a portion of the Seller's replacement and/or repurchase obligations under Section 402(b) hereunder, Seller shall at all times maintain in accordance with the requirements of this Article V, reserve collateral consisting of additional Mortgages (the "Secured Reserve Mortgages") and/or cash or a combination thereof in demand deposit accounts (the "Secured Reserve Funds") in an aggregate amount equal to 20% of the principal outstanding amount of all Mortgages held by NHSA (the "Secured Reserve Ratio"). In lieu of the 20% Secured Reserve Mortgages/Funds, Seller shall have the option to satisfy the Secured Reserve Collateral by depositing with NHSA a 10% cash deposit. Such cash deposit shall bear interest at a rate of 3% per annum and payable quarterly to Seller. The Secured Reserve Funds and the Secured Reserve Mortgages shall collectively be referred to herein as the "Secured Reserve Collateral."

b) Concurrently with each sale of a Mortgage hereunder, the Seller shall deliver to NHSA Secured Reserve Collateral in an amount at least equal to the Secured Reserve Ratio with respect to such Mortgage, provided however, that NHSA shall not be obligated to accept any Secured Reserve Mortgage: (i) which was not in material compliance with the terms and conditions of this Agreement; or (ii) with respect to which NHSA has reason to believe it would be legally or contractually barred from substituting, pursuant to Section 402(b) hereunder, for the Mortgage being sold. Upon the payment in full of all principal, interest and other amounts due with respect to any Mortgage sold hereunder, NHSA shall return to Seller the Secured Reserve Collateral provided by Seller with respect to such Mortgage (or, in the reasonable discretion of NHSA, other Secured Reserve Collateral in a like amount), but only to the extent that Seller will continue to meet the Secured Reserve Ratio after such return of Secured Reserve Collateral.

c) In the event that NHSA exercises its right to replace delinquent Mortgages out of Secured Reserve Collateral pursuant to section 402(b), then Seller shall promptly deliver additional Secured Reserve Collateral acceptable to NHSA in an amount sufficient to maintain the Secured Reserve Ratio.

FA961580.055.b/revised 2-15-05            8

d) Any secured Reserve Mortgage which is 90 days or more delinquent shall be replaced by Seller with Secured Reserve Collateral acceptable to NHSA within 30 days of such delinquency.

502. <u>Security Interest</u>. In order to secure the performance of Seller's obligations pursuant to Section 402(b) hereof, Seller hereby grants to NHSA a first- priority security interest in and lien on: (a) the NHSA Trust and Escrow Account; and (b) all Secured Reserve collateral now or hereafter in the custody of NHSA, provided however, that until title to such Secured Reserve Collateral is transferred to NHSA, and so long as the Secured Reserve Ratio is maintained, Seller shall be entitled to, and shall collect, all repayments of principal and all interest and other income earned or accrued on the Secured Reserve Collateral. At the request of NHSA, Seller will promptly join with NHSA in executing such financing statements, continuation statements, assignments, certificates and other documents with respect to the NHSA Trust and Escrow Account and the Secured Reserve Collateral, pursuant to the applicable Uniform Commercial Code and otherwise, as NHSA may request in order to enable NHSA to perfect and from time to time to renew the security interests granted hereby, and Seller will pay the costs of filing the same in all public offices where NHSA deems such filings to be necessary or desirable.

503. <u>Secured Reserve Mortgages</u>.

a) Concurrently with the delivery of each Secured Reserve Mortgage to NHSA, Seller shall deliver to NHSA, with respect to such Secured Reserve Mortgage: (i) a fully executed mortgage assignment or deed of trust assignment (the "Assignment"); (ii) a duplicate original of all applicable insurance certificates each bearing an endorsement or other binding indication that it runs to the benefit of NHSA; (iii) the original executed promissory note evidencing such Mortgage; and (iv) for first lien Mortgages, a title insurance policy insuring NHSA's first lien priority status as to the applicable real property, and for other Mortgages, evidence of title satisfactory to NHSA. Seller agrees that NHSA shall have the right to record the Assignment at any time so long as NHSA continues to hold the Secured Reserve Mortgages.

b) With the exception of Section 401(j), Seller shall have all the servicing obligations described in Section 401 hereof with respect to all Secured Reserve Mortgages. Seller shall receive no compensation from NHSA for servicing the Secured Reserve Mortgages. So long as the Secured Reserve Ratio is maintained, Seller shall be entitled to retain all principal, interest and other amounts it may collect with respect to the Secured Reserve Mortgages.

504. <u>Secured Reserve Funds</u>. NHSA shall segregate all Secured Reserve Funds from its other funds in a separate interest-bearing demand deposit account identified by Seller's name and the words "Collateral Account," <u>provided, however</u>, that the institution in which such account is established and the terms and conditions of such account shall be determined or accepted by NHSA, in its sole discretion. Withdrawals from such account shall require only the signature of a duly authorized representative of NHSA. So long as the Secured Reserve Ratio is maintained, Seller shall be entitled to, and NHSA shall periodically pay to Seller, all interest and other income earned on the Secured Reserve Funds.

505. Reserved.

## ARTICLE VI
## OTHER PROVISIONS

601. Repurchase/Replacement. Without limitation to or exclusion of any other rights or remedies NHSA may have at law or in equity or under the terms of the Purchase Documents, upon default or delinquency of any Mortgage, upon Seller's default under or breach of any term or condition of the Purchase Documents, or upon the filing of any suit brought by a borrower against Seller or NHSA with respect to a Mortgage or any Purchase Documents, NHSA shall have the right to require Seller to repurchase or replace any or all Mortgages sold to NHSA. The purchase price or replacement value shall equal the outstanding principal balance of all Mortgages to be repurchased or replaced, plus all costs and expenses of initiating and completing the repurchase or replacement.

602. Foreclosure. Nothing in the Purchase Documents shall be construed to limit or exclude NHSA's right to institute and complete foreclosure proceedings against any or all Mortgages.

603. Waivers. The terms and provisions of the Purchase Documents may only be waived by written agreement duly executed by both Seller and NHSA.

604. Indemnity.

a) NHSA shall indemnify Seller and hold it harmless for any loss, damages or expense (including without limitation, attorneys' fees and document restoration costs) that Seller may sustain as a result of any failure on the part of NHSA to perform properly its services, duties or obligations under the Purchase Documents.

b) Seller shall indemnify NHSA and hold it harmless for any loss, damage or expense (including without limitation, attorneys' fees and document restoration costs) that NHSA may sustain as a result of any failure on the part of Seller to perform properly its services, duties or obligations under the Purchase Documents.

605. Survival of Provisions; Reliance on Provisions. All of the provisions, terms and conditions of the Purchase Documents shall be considered warranties of Seller and NHSA and shall survive payment by NHSA of the purchase price and delivery by Seller of the Mortgage documents, and shall not be affected by any investigation made by, or on behalf of, NHSA or Seller of any documents or of any other matter relating to the Mortgage. Seller and NHSA acknowledged that NHSA and any transferee or assignee of NHSA shall purchase the Mortgages in reliance upon the accuracy and truth of all the warranties and representations set forth in the Purchase Documents; and Seller and NHSA acknowledge that Seller shall sell the Mortgages and its services to NHSA in reliance upon the accuracy and truth of all the warranties and representations set forth in the Purchase Documents.

606. Assignment Rights. All rights and duties under the Purchase Documents may be sold, assigned, conveyed, hypothecated, pledged, or in any way transferred by NHSA. NHSA's

FA961580.055.b/revised 2-15-05            10

right to transfer shall not require any consent of Seller and all references to NHSA in the Purchase Documents shall be deemed to include its transferee.

607. <u>Independent contractors</u>. The relationship of Seller and NHSA shall be that of independent contractors and neither party shall be the agent of the other.

608. <u>Bonding</u>. Seller and NHSA shall each, at their own expense, maintain in effect at all times a Fidelity Bond (or Direct Surety Bond) on all officers, employees and other persons authorized by each to act on its own behalf, for the benefit of the other.

609. <u>Inspection</u>. Upon request of NHSA, either before or after the termination of this agreement, Seller shall permit NHSA at any time during normal business hours to inspect Mortgage files and all of Seller's records pertaining to Mortgage operations related to NHSA.

610. <u>Amendments</u>. The Purchase Documents may be amended at any time by the substitution of pages which have been initialed by authorized representatives of both Seller and NHSA.

611. <u>Equal Opportunity</u>. NHSA and Seller shall each comply with Title VI of the Civil Rights Act of 1964, and Title VIII of the Civil Rights Act of 1968, and any applicable regulations and orders thereunder, and with Executive Order 11063, Equal Opportunity in Housing, issued by the President of the United States on November 20, 1962.

612. <u>Changes in Organization/Bankruptcy/Fraud</u>. Each of the parties hereto shall immediately notify the other of any contemplated material change(s) in its organization such as, but not limited to, resignation of management personnel, mergers or consolidations, change of name or corporate charter, etc. Each of the parties shall immediately notify the other of any voluntary or involuntary proceedings which might result in bankruptcy, reorganization, dissolution, liquidation, the appointment of a trustee or receiver, assignment for the benefit of creditors, or being placed on probation or having activities restricted in any manner whatsoever by any governmental agency. Each of the parties shall promptly notify the other of all cases of embezzlement, fraud, criminal or dishonest acts of any employee, officer or agent, or of the cancellation or nonrenewal of fidelity bonding coverage.

613. <u>Notice</u>. Any communication, advice, consent, document notice or direction given, made, sent or withdrawn pursuant to the Purchase Documents shall be in writing and shall be deemed delivered upon deposit in the United States mail, properly addressed and first class postage prepaid, as follows:

To NHSA:   Neighborhood Housing Services
           of America
           1970 Broadway, Suite 400
           Oakland, CA 94612

To Seller: Rainbow Community Organization Inc.
           610 E. Brackenridge St.
           Fort Wayne, IN 46802

FA961580.055.b/revised 2-15-05           11

Other addresses may be substituted for the above upon giving notice as provided for in this Section.

614. **Applicable Law.** The Purchase Documents shall be governed and construed in accordance with the laws of the State of California. Nothing in the Purchase Documents shall be construed in any way to conflict with, alter or amend any federal, state or local laws, rules or regulations applicable to seller or NHSA.

Executed this 8th day of June, 2005.

NEIGHBORHOOD HOUSING SERVICES
OF AMERICA (NHSA)

By: _____
Name: Jesus S. Talens
Title: Senior Vice President

(Seller)

By: _____
Name: Nicole Turner Abrahams
Title: Executive Director