# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| NEIGHBORHOOD HOUSING SERVICES OF AMERICA, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO. 1:08-CV-00182 ) |
| RAINBOW COMMUNITY ORGANIZATION, INC., et al., | ) ) ) |
| Defendants/Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, et al., | ) ) ) |
| Third-Party Defendant. | ) |

## OPINION AND ORDER

Before the Court in this insurance coverage dispute is a motion to compel filed by Defendant/Third-Party Plaintiff Nicole Turner-Ridley, requesting that the Court compel Third-Party Defendant Philadelphia Indemnity Insurance Company ("Philadelphia") to properly respond to her First Set of Interrogatories and Request for Production of Documents. (Docket # 95.) A hearing was held on the motion on December 11, 2009. (Docket # 103.) For the following reasons, the motion will be GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

### A. Factual and Procedural Background

In June 2005, Plaintiff Neighborhood Housing Services of America, Inc. ("NHSA") entered into a Revised Loan Sale and Servicing Agreement with Defendant/Third-Party Plaintiff

Rainbow Community Organization, Inc., a provider of mortgage loans to low-income families, whereby NHSA agreed to purchase certain mortgage loans originated by Rainbow. (Am. Compl. ¶ 12.) Three years later, that is, in July 2008, NHSA filed this action advancing breach of contract, civil conversion, negligence, and fraud claims against Rainbow and several of its employees, including Turner-Ridley (collectively, the "Defendants"), alleging that they inappropriately diverted funds from NHSA. (Am. Compl. ¶ 15.)

Upon learning of the suit, Defendants notified Philadelphia, Rainbow's insurer, but Philadelphia denied coverage, stating, among other things, that a "professional services exclusion" in its policy precluded coverage of the claim for all Defendants, including Turner-Ridley. (Third-Party Compl. ¶¶ 7, 12.) As a result, Defendants filed a third-party complaint for declaratory judgment, asking the Court to declare that Defendants are afforded insurance coverage under the policy issued by Philadelphia.[1] (Third-Party Compl. 5.)

On June 29, 2009, the Court conducted a scheduling conference with the parties and established a discovery deadline of April 1, 2010. (Docket # 73.) On September 15, 2009, Turner-Ridley served a First Set of Interrogatories on Philadelphia, requesting information concerning (1) the identity of individuals involved in reviewing and denying Defendants' claims, and the communications they had with Defendants; (2) any lawsuits in which Philadelphia had previously used the "professional services exclusion" to deny coverage in any claim; (3) the identity of each individual who served as underwriting personnel for the policy; and (4) the identity of each individual involved in the review and decision to afford coverage on a separate claim made by Rainbow and its employees involving substantially similar allegations (the "Salin

---

[1] Defendants do *not* allege in their third-party complaint that Philadelphia denied their claim in bad faith.

Bank matter"). (Mem. of Law in Supp. of Def./Third-Party Pl.'s Mot. to Compel 3, Ex. A.) Turner-Ridley also served a Request for Production on Philadelphia, seeking copies of (1) Philadelphia's underwriting and claims files in the instant action and the Salin Bank matter; (2) Philadelphia's claims, policy or procedure manuals addressing the "professional services exclusion"; and (3) records indicating the amount of reserves maintained by Philadelphia for claims in this matter. (Mem. of Law. 3, Ex. A.)

Philadelphia objected to a majority of Turner-Ridley's Interrogatories and Requests for Production on relevancy grounds. (Mem. of Law Ex. B.) Consequently, on December 1, 2009, Turner-Ridley filed the instant motion to compel. (Docket # 95.)

### B. Standard on a Motion to Compel Discovery

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense . . . ." For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (citation omitted); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* (citations omitted).

### C. Discussion

Turner-Ridley rather broadly asserts that her requested discovery is relevant because it

3

"addresses the interpretation of the subject policy at issue in this case and relates directly to the claims advanced in the Third-Party Complaint and the defenses raised by Philadelphia." (Reply Br. 5.) Philadelphia, however, asserts that extrinsic evidence is unnecessary to determine the meaning of the "professional services exclusion" in the policy, stating that it will soon file a motion for summary judgment on the basis that the plain language of the provision precludes coverage as a matter of law.

Under Indiana law, "[c]ontracts of insurance are subject to the same rules of construction as are other contracts . . . ." *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind. Ct. App. 2004). "Summary judgment is proper if, as a matter of law, it is apparent that extrinsic evidence is unnecessary to ascertain the meaning of the policy." *Commercial Union Ins. v. Moore*, 663 N.E.2d 179, 180 (Ind. Ct. App. 1996). "[I]f a contract is clear and unambiguous, the language therein must be given its plain meaning." *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002) (citation omitted). "It is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the fact-finder must determine the facts upon which the contract rests." *Zurich Am. Ins. Group v. Wynkoop*, 746 N.E.2d 985, 988 (Ind. Ct. App. 2001). "[A]mbiguity arises where the policy is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning." *Am. Nat'l Fire Ins. Co. v. Rose Acre Farms, Inc*., 107 F.3d 451, 457 (7th Cir. 1997) (applying Indiana law).

On at least one occasion, this Court addressed the interpretation of a "professional services exclusion" and found it unnecessary to turn to extrinsic evidence to ascertain its meaning. *See Nat'l Ben Franklin Ins. Co. of Ill. v. Calumet Testing Servs., Inc*., 60 F. Supp. 2d 837 (N.D. Ind. 1998), *affirmed* 191 F.3d 456 (7th Cir. 1999) (unpublished). In another insurance

4

coverage dispute, the Seventh Circuit Court of Appeals determined that a discovery request involving "other claims made by other insureds under other contracts" was not relevant to the coverage issue, explaining that "[i]nsurance coverage is a legal question based upon the terms of the underlying insurance contract". *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 516-17 (7th Cir. 1995) (denying discovery about other claims made by insureds arising from the same ice storm as the plaintiff's claims). Furthermore, much of the discovery that Turner-Ridley seeks is overly broad (for example, extending to the disclosure of Philadelphia's underwriting personnel and files) and seemingly irrelevant in determining the meaning of the "professional services exclusion", the narrow point upon which the third-party claim ostensibly hinges.

Notwithstanding the foregoing, Interrogatories Nos. 6 and 7 may indeed lead to the discovery of admissible evidence and are not overly broad. In these two Interrogatories Turner-Ridley asks Philadelphia whether it was involved in any lawsuit in which it cited a "professional services exclusion" to deny coverage, and if so, the caption of each lawsuit and its result. This information could lead Turner-Ridley to other cases in which courts have interpreted the language of a "professional services exclusion" in a coverage dispute and thus may be relevant. *See, e.g.*, *Nat'l Ben Franklin*, 60 F. Supp. 2d at 844-45 (considering the definitions of "professional services" that various courts have employed).

Therefore, Turner-Ridley's motion to compel will be GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART, subject to renewal upon the filing of Philadelphia's motion for summary judgment. That is, if at that time Turner-Ridley believes it cannot respond to Philadelphia's summary judgment motion without performing certain targeted discovery, she may file an affidavit pursuant to Federal Rule of Civil Procedure 56(f) explaining specifically

what discovery she needs to perform in order to respond to Philadelphia's motion.  And of course, if upon resolution of Philadelphia's summary judgment motion, the language of the "professional services exclusion" is determined to be ambiguous and its interpretation requires extrinsic evidence, Turner-Ridley's motion to compel may be renewed as well.

### D.  Conclusion

The motion to compel filed by Defendant/Third-Party Plaintiff Turner-Ridley (Docket # 95) is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

SO ORDERED.

Enter for December15th, 2009.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge
