# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| NEIGHBORHOOD HOUSING SERVICES OF AMERICA, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. 1:08-CV-182 |
| NICOLE TURNER-RIDLEY, et al., | ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on: (1) Motion for Summary Judgment of Third-Party Defendant Philadelphia Indemnity Insurance Company, filed on March 31, 2010; (2) Defendant/Third-Party Plaintiff, Nicole Turner-Ridley's, Motion for Partial Summary Judgment, filed on March 31, 2010; and (3) Motion of Third-Party Defendant Philadelphia Indemnity Insurance Company to Strike as Untimely Defendant/Third-Party Plaintiff Nicole Turner-Ridley's Response in Opposition to Philadelphia Indemnity Insurance Company's Motion for Summary Judgment and Reply in Support of Motion for Partial Summary Judgment of Nicole Turner-Ridley, filed on May 11, 2010. After due consideration, the motion to strike (DE # 125) is **DENIED**. Because the underlying complaint does not contain an allegation which could potentially come within the coverage of the insurance policy issued to Rainbow by Philadelphia,

-1-

Philadelphia's motion for summary judgment (DE# 116) is **GRANTED** and Nicole Turner-Ridley's motion for summary judgment (DE# 117) is **DENIED**.

BACKGROUND

Plaintiff, Neighborhood Housing Services of America ("NHSA") brought suit against Rainbow Community Organization, Inc. ("Rainbow") and three of its employees, Nicole Turner-Ridley, Mary Bailey and Margaret Steinbacher, arising out of the Rainbow Defendants' involvement in servicing mortgage loans purchased from Rainbow by NSHA. Rainbow and its employees have filed a third-party complaint seeking a declaratory action against their insurance provider, Philadelphia Indemnity Insurance Company ("Philadelphia"), seeking a declaratory judgment that Philadelphia has a duty to defend and indemnify them with respect to NHSA's claims.

Nicole Turner-Ridley and Philadelphia have filed cross motions for summary judgment on the declaratory judgment issue.

DISCUSSION

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56© of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will

properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Interpretation of a written contract, including a contract of insurance, typically presents a question of law suitable for resolution on motions for summary judgment. *Erie Ins. Group, Alliance Environmental, Inc.*, 921 F.Supp. 537, 539 (S.D. Ind. 1996). "When the question presented is whether an insurance policy provides liability coverage for a particular claim or lawsuit, the central material facts are ordinarily the terms of the written contract and the contents of the plaintiff's allegations in the underlying litigation." *Id.(citations* omitted). Here, the facts are not disputed; instead, it is the legal conclusions to be drawn from the terms of the insurance contract as applied to the underlying lawsuit that is at issue.

Facts

Rainbow is an Indiana non-nonprofit organization in the business of providing mortgage loans to purchase and rehabilitate homes to low income families in and around Fort Wayne, Indiana. (Rainbow's Answer to Sec. Am. Cmplt ¶¶ 2, 8). At all material times, Nicole Turner-Ridley ("Ridley") was employed by Rainbow and served as Rainbow's Executive Director. (Ridley's Answer to Sec. Am. Cmplt ¶ 9).

On July 31, 2008, NHSA sued Rainbow and three of its employees, including Ridley, for damages arising out of their involvement in servicing mortgage loans purchased from Rainbow by NSHA. (Second Am. Cmplt). According to NHSA's second amended complaint, it entered into a Revised Loan Sale and Servicing Agreement, whereby NHSA agreed to purchase from Rainbow and Rainbow agreed to sell to NHSA, certain mortgage loans originated by Rainbow. (Second Am. Cmplt, ¶ 12). Pursuant to that agreement, Rainbow was to receive a quarterly fee from NHSA in exchange for retaining certain responsibilities for the purchased loans. (Second Am. Cmplt, ¶ 13). As part of Rainbow's retained responsibilities, Rainbow accepted loan payments from borrowers and forwarded these amounts to NHSA. (Second Am. Cmplt, ¶ 14). In addition, when mortgage loans were paid off, Rainbow was required to forward those payoff amounts to NHSA. (Second Am. Cmplt, ¶ 14). Between 2001 and 2006, Rainbow accepted several payoffs on mortgage

loans. (Second Am. Cmplt, ¶ 15). However, instead of forwarding these payoffs to NHSA, Defendants allegedly diverted these funds into accounts controlled by Rainbow for use by Rainbow. (Second Am. Cmplt, ¶ 15). After allegedly misdirecting the funds, Rainbow continued to make the monthly payments on the mortgage loans to NHSA as though the loans had not been paid off. (Second Am. Cmplt, ¶ 15). According to NHSA, Rainbow allowed a number of mortgage loans to go into default. (Second Am. Cmplt, ¶ 16). Based on these allegations, NHSA brought suit against Ridley for civil conversion, negligence, conspiracy and fraud. (Second Am. Cmplt). The negligence claim against Ridley arises from her alleged failure to properly supervise Rainbow employees in the administration and services of the loans, which included ensuring that any payoff amounts were property applied to those loans. (Second Am. Cmplt, ¶¶ 9, 35-37).

Upon receipt of NHSA's lawsuit, Rainbow Defendants sought Philadelphia to defend them pursuant to a commercial general liability insurance policy Philadelphia issued to Rainbow under Policy No. PHSD216703 (hereinafter "Policy"). (Ridley's Motion. Ex. A). The Policy provided Commercial Property Coverage, Commercial General Liability Coverage, Commercial Crime Coverage, Commercial Inland Marine Coverage, Commercial Auto Coverage, Business Owners, Workers Compensation and "Flexi Plus Five" coverage parts. (Ridley's Motion. Ex. A, Common Policy Decl., p.

7). The Flexi Plus Five Policy coverage included Not-For-Profit Organization Directors & Officers Liability Insurance, Employment Practices Liability Insurance and Fiduciary Liability Insurance. (Ridley's Motion, Ex. A, Flexi Plus Declarations, p. 9). Under the Policy, Ridley was covered as an "Individual Insured" due to her role as Executive Director and employee of Rainbow. (Ridley Motion, Ex. A, Common Policy Definitions, p. 32).

According to the Policy's Directors & Officers Liability Insurance, Philadelphia was obligated to insure both individual directors and officers as well as the organization for any loss or claims made for "D&O Wrongful Acts." (Ridley Motion, Ex. A, Not-For-Profit Organization Directors & Officers Liability Insurance, p. 21). A "D&O Wrongful Act" is defined, in part, by the policy as any actual or alleged "act, error, omission, misstatement, misleading statement, neglect, breach of duty or Personal & Advertising Injury committed or attempted by an Individual Insured in his/her capacity as an Individual Insured; or by the Organization . . .." (Ridley Motion, Ex. A, Not-For-Profit Organization Directors & Officers Liability Insurance, p. 21). The Policy further provided that, once an insured tendered the defense of a claim to Philadelphia, Philadelphia "shall undertake and manage the defense of such Claim, even if such Claim is groundless, false or fraudulent." (Ridley Motion, Ex. A, Common Policy Conditions, pp. 36-37).

The Policy also contained a Professional Services Exclusion endorsement, which modified the Flexi Five Plus coverage. (Third-Party Cmplt, ¶¶ 7-9; Ex. B). This endorsement provided:

> **PROFESSIONAL SERVICES EXCLUSION (SUPERVISION CARVE-OUT)**
>
> The Policy is amended as follows:
>
> With respect to coverage under Part 1, the Underwriter shall not be liable to make any payment for Loss in connection with any Claim made against the Insured based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the Insured's performance of or failure to perform professional services for others.
>
> Provided, however, that the foregoing shall not be applicable to any derivative action Claim alleging failure to supervise those who performed or failed to perform such professional services.

(Ridley Motion, Ex. A, p. 49).

In October 2008, Philadelphia informed Rainbow and Ridley that it denied coverage for the claims asserted against Rainbow by NHSA based on the Policy's professional services exclusion. (Third-Party Cmplt ¶ 12). In response, Rainbow and Ridley filed a Third-Party Complaint against Philadelphia seeking a declaration that the Policy affords coverage for the claims asserted against them by NHSA. (Third-Party Cmplt).

Indiana Contract Law Governing
<u>Interpretation of Insurance Policy at Issue</u>

Indiana law governs the interpretation of the Policy. Under Indiana law, if a contract is clear and unambiguous, the language

contained in the contract must be given its plain meaning. *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1101 (Ind. 1985). If there is ambiguity- where reasonable persons honestly differ as to its meaning - the insurance policy will be construed in favor of the insured and against the insurance company. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002); *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). An insurance policy's exclusionary provisions are subject to the same rules of construction. "An exclusion will be given effect only if it unmistakably brings the act or omission within its scope." *Evans v. National Life Accident Ins. Co.*, 467 N.E.2d 1216, 1219 (Ind. Ct. App. 1984).

An insurer's duty to defend a claim is determined by the nature of the complaint. *Transamerica Ins. Services v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991).

> When the nature of the claim is obviously not covered by the policy of insurance, there is no duty to defend. There is no question that if the policy is otherwise applicable, the insurance company is required to defend even though it may not be responsible for all the damages assessed, so long as there is an element of negligence to be determined. The insurer's duty to defend is broader than its duty to pay.

*Id.* (citations omitted).

Thus, if the underlying complaint contains any allegation which could potentially come within the coverage of the insurance policy issued to Rainbow by Philadelphia, then Philadelphia is required to defend Rainbow in that underlying lawsuit.

The Professional Services Exclusion
<u>Precludes Coverage for Turner-Ridley.</u>

Philadelphia relies on the professional services exclusion to deny coverage to Ridley. That exclusion states that Philadelphia will not be liable in connection with a claim made against its insured "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the Insured's performance of or failure to perform professional services for others." (Ridley Mot., Ex. A). Thus, this Court must determine whether NHSA's claims made against Ridley arise out of her providing or failing to provide professional services. The term "professional services" is not defined by the Policy, so the Court will look to Indiana's interpretation of that term.

NHSA's complaint alleges Ridley's
<u>actions constitute professional services</u>

In Indiana, "professional services" means "any business activity conducted by the insured which involves specialized knowledge, labor or skill and which is predominantly mental or intellectual as opposed to physical or manual in nature." *Terre Haute National Bank v. Pacific Employers Ins. Co.*, 634 N.E.2d 1336, 1339, n.2 (Ind. Ct. App. 1994). "Not every action a professional takes in the course of providing professional services will be a professional service for insurance purposes, but that when the

professional draws upon his or her professional knowledge, experience, and training in taking some action, that is a professional service for insurance purposes." *Erie Ins. Group v. Alliance Environmental, Inc.*, 921 F.Supp. 537, 546 (S.D. Ind. 1996). Thus, when "the insured is being sued for taking actions in the course of providing professional services, and where those actions both are reasonably related to the services being provided and involve the use of (or failure to use) professional knowledge, skill, experience, or training, the 'professional' services exclusion applies." *Id.* at 547.

The complaint in the underlying suit alleges that the Ridley and her fellow Rainbow Defendants breached their duties under the Loan Servicing Agreement in a number of ways: by failing to collect payments and failing to maintain accurate records with regards to the purchased loans; by failing to segregate all monies due and owning to NHSA; by failing to report to NHSA that purchased loans had been paid off; by allowing purchased loans to go into default; and by failing to protect NHSA's security interest and status as a first lienholder. Not only is Ridley alleged to have directly taken part in some of these actions, but the lawsuit alleges she was negligent in the supervision of other Rainbow employees who took part in these actions.

Ridley argues that her and Rainbow's alleged actions in the complaint do not constitute professional services. According to

Ridley, NHSA's allegations simply relate to the failure to advance collected mortgage payments to NHSA and these actions are merely "nonspecialized, clerical and administrative" which do not require any special training skill or knowledge. In support of this argument, Ridley points to *Jefferson Ins. Co. of New York v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 677 N.E.2d 225 (Mass. App. Ct. 1997). In *Jefferson*, the court held that a radio dispatcher of ambulance company was not performing professional services by receiving calls and forwarding information to ambulance personnel. *Id.*

Unlike the acts of merely forwarding information that were found not to be professional services in *Jefferson*, the Rainbow defendants are alleged to have breached their contractual duty to collect payments, segregate funds, maintain accurate records, and make accurate reports to loan payoffs. Ridley's alleged actions did not merely involve physical, manual or clerical tasks.

Instead, the contractually imposed duties required the Rainbow Defendants to draw upon specialized knowledge, experience and training to protect NHSA's interests in the purchased loans and properties. Thus, the Rainbow Defendants' alleged actions which give rise to the underlying complaint are professional services, as that term is understood in Indiana insurance law. See e.g., *Terre Haute First National Bank v. Pacific Employers Insurance Co.*, 634 N.E.2d 1336 (Ind. Ct. App. 1994)(holding that professional services

exclusion applies to when a bank failed to render adequately a professional service to a bank customer).

### NHSA's failure to supervise claim alleges a professional service

Ridley argues that NHSA's claims relating to her alleged failure to supervise employees is not a professional service. However, Ridley's argument is premised on the notion that she was supervising Rainbow employees who were not providing professional services. Because this Court has already determined that NHSA's complaint alleges that the Rainbow defendants were providing professional services, Ridley's argument fails. Indeed, if anything, Ridley's supervision of individuals performing professional services requires heightened knowledge, experience and training. Consequently, NHSA's allegation that Ridley failed to supervise Rainbow employees performing professional services, is itself a professional service.

### The term "derivative action" in the Professional Service Exclusion is not ambiguous

Despite the fact that NHSA's claim against Ridley for failure to supervise is a professional service, Ridley still maintains that this claim is not excluded from coverage because the professional services exclusion is ambiguous. In support of this argument, Ridley relies on the wording of the professional services

exclusion, which provides that "the foregoing shall not be applicable to any derivative action Claim alleging failure to supervise those who performed or failed to perform such professional services."

Ridley argues that the term "derivative action" in the professional services exclusion is ambiguous because the policy's "'Common Policy Exclusions' specifically provides that there is no coverage for a loss in connection with any claim made against an insured 'brought or maintained by, at the behest of, or on behalf of the Organization.'" (Ridley Resp. p. 7).

Under Indiana law, "an insurance contract is ambiguous when it is susceptible to more than one interpretation and reasonably intelligent persons would honestly differ as to its meaning." *Allstate Ins. Co. v. Bradtmueller*, 715 N.E.2d 145, 149 (Ind. Ct. App. 1999). Ridley is not really arguing that the term "derivative action" is ambiguous. Instead, what Ridley is arguing is that the reference to a derivative action claim in the professional services exclusion is redundant. While there may be more than one reference to a derivative action, there is nothing in the Policy to lead reasonable persons to differ as to the term's meaning. As Philadelphia points out, "redundancy does not equal ambiguity." *See e.g., In re Boelson Trust*, 830 N.E.2d 37, 44 (Ind. Ct. App. 2005), *overruled on other grounds, University of Southern Indiana Foundation v. Baker*, 843 N.E.2d 528 (Ind. 2006).

While the derivative action claim in the professional services exclusion may be redundant, it is not ambiguous.

Philadelphia's Directors and
Officers coverage is not illusory.

Ridley argues that because the Policy contains Not-For-Profit Organization Directors and Officers Liability Insurance ("D&O"), Philadelphia cannot exclude coverage for professional services. To do so, Ridley argues, renders the D&O errors and omissions coverage illusory.

An insurance provision is considered illusory if "a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 879 (7th Cir. 1999); *Meridian Mut. Ins. Co. v. Ritchie*, 540 N.E.2d 27, 30 (Ind. 1989), vacated, 544 N.E.2d 488 (Ind.)(on rehearing, Court held that it misinterpreted policy and that policy was not illusory). If the provision at issue covers some risk reasonably anticipated by the parties, it is not illusory. *City of Lawrence v. Western World Ins. Co.*, 626 N.E.2d 477, 480 (Ind. Ct. App. 1993). If it does not "the policy will be enforced to satisfy the reasonably expectations of the insured." *Great Lakes Chem. Corp. v. International Surplus Lines Ins. Co.*, 638 N.E.2d 847, 850 (Ind. Ct. App. 1994).

The Policy's D&O coverage applies to any "D&O Wrongful Act," which is defined as any actual or alleged:

1.  act, error, misstatement, misleading statement, neglect, breach of duty or **Personal & Advertising Injury** committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured**; or by the **Organization**; or

        2.  act, error, misstatement, misleading statement, neglect, breach of duty or **Personal & Advertising Injury** committed or attempted by an **Individual Insured** while serving as a director, officer, governor or trustee of any **Outside Entity**, if such service is at the written request or direction of the **Organization**.

(Pl. Mot. Summ. Judg. Ex. A, p. 21).

Personal & Advertising Injury Means any actual or alleged:

    1.  false arrest, detention or imprisonment, or malicious prosecution; or

    2.  oral or written publication of material that slanders or libels a person or entity or disparages a person's or entity's goods, products or services; or

    3.  oral or written publication of material that violates a person's right of privacy; or

    4.  wrongful eviction or entry or other invasion of the right of privacy; or

    5.  misappropriation of advertising ideas, unauthorized use of title or slogan, or plagiarism; or

    6.  infringement of copyright or trademark.

(Pl. Mot. Summ. Judg. Ex. A, p. 22).

The parties agree as to the law regarding what constitutes illusory coverage; however, they disagree on whether the professional services exclusion renders the D&O coverage illusory

-16-

in this case. Ridley argues that "because Rainbow's core business practices constitute professional services, the policy's professional services exclusion would preclude coverage for any hypothetical situation where a Rainbow employee committed a "D&O Wrongful Act" in the scope of their employment. (DE# 123, Ridley Resp, pp. 10-11).

Despite Ridley's argument, the D&O covers many reasonably expected circumstances that would not involve professional services. Indeed, not every act Ridley performs within the scope of her employment is a "professional service." See e.g. *Erie Ins. Group*, 921 F.Supp. at 543-44(discussing cases where employees who provide professional services also perform non-professional services as part of their job). As such, while the professional services exclusion excludes some D&O coverage, it does not exclude all D&O coverage. The D&O coverage still covers some reasonably anticipated risk despite the existence of the professional services exclusion. Therefore, the professional services exclusion does not render the D&O policy illusory. *Schwartz*, 174 F.3d at 880.

CONCLUSION

For the reasons set forth above, the motion to strike (DE # 125) is **DENIED**. In addition, Philadelphia's motion for summary

judgment (DE# 116) is **GRANTED** and Nicole Turner-Ridley's motion for summary judgment (DE# 117) is **DENIED**.

**DATED: September 24, 2010**          /s/RUDY LOZANO, Judge
                                        **United States District Court**